## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 21 2017, 5:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah K. Shepler
Sullivan, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of: B.H., C.H., & L.W., Minor Children, | August 21, 2017 |
| | Court of Appeals Case No. 77A05-1702-JT-324 |
| J.M.H., Mother, | |
| *Appellant-Respondent,* | Appeal from the Sullivan Circuit Court |
| v. | The Honorable Robert E. Hunley, II, Judge |
| Indiana Department of Child Services, | The Honorable Robert E. Springer, Magistrate |
| *Appellee-Petitioner.* | Trial Court Cause Nos. 77C01-1607-JT-40 77C01-1607-JT-41 77C01-1607-JT-42 |

**Najam, Judge.**

## Statement of the Case

J.M.H. ("Mother") appeals the trial court's termination of her parental rights over her minor children B.H., C.H., and L.W. (collectively "Children"). Mother[1] raises a single issue for our review, namely, whether the State presented sufficient evidence to support the termination of her parental rights. We affirm.

## Facts and Procedural History

In June 2013, the Department of Child Services ("DCS") investigated a report that the Children were victims of neglect. On June 5, DCS filed a petition with the trial court in which DCS alleged that the Children were children in need of services ("CHINS"). At a hearing on June 26, Mother admitted to the allegations in the CHINS petition, namely, that she had failed to supervise the Children.[2] The trial court adjudicated the Children to be CHINS based on Mother's admission. On July 24, the court found that Mother needed assistance with, among other things, general parenting skills, housing, finding employment or suitable income, drug and alcohol issues, maintaining the home, and fulfilling her obligations as a parent. The trial court ordered Mother to comply with a parental participation order that required Mother to stay in

---

[1] The biological father of C.H. and B.H. is deceased. The biological father of L.W. voluntarily terminated his parental rights and, therefore, does not join in this appeal.

[2] DCS presented evidence that on one occasion C.H. "was permitted to have a boy in her bedroom who performed oral sex on [her] while mother was in the house" and that Mother was "passed out leaving the other two children unsupervised." Ex. 7 at 1.

regular contact with the Family Case Manager ("FCM") and to keep all appointments with the FCM, complete a substance abuse assessment, and complete a parenting assessment. The trial court also ordered Mother to abstain from using illegal controlled substances. At that time, the Children remained with Mother.

[3] One week later, on July 31, the trial court removed the Children from Mother's care after Mother had tested positive for methcathinone and THC. On December 4, the trial court returned B.H. and L.W. to Mother's care due to Mother's compliance with services and random drug screens. On March 18, 2015, the trial court returned C.H. to Mother's care.

[4] On June 29, the trial court again removed the Children from Mother's care because Mother: failed on several occasions to contact DCS to determine whether she was required to submit to drug screens; failed to seek DCS approval before allowing others to have significant and extended contact with the Children; and failed to report to DCS that C.H. had harmed herself while under Mother's care and supervision. In September 2015, Mother was arrested for a DUI and released on bond. She was arrested again in October 2015 and remained in jail until January 2016. After her release, Mother violated the terms of her probation in February 2016 and was incarcerated.

[5] Mother did not successfully complete her court-ordered services in the CHINS matter, and, on July 11, 2016, DCS filed petitions to terminate her parental

rights as to each child.   Following a hearing, the trial court found and

concluded in relevant part as follows:

> 1.      Child[ren] and Mother have a history with DCS.
>
> 2.      A prior CHINS case was opened in 2008 with Mother and Child[ren] due to Mother's substance abuse while caring for Child[ren].
>
> 3.      Mother failed to complete services in the prior CHINS case and it was dismissed in 2011 due to a guardianship with grandmother.
>
> 4.      At some point between 2011 and 2013[] guardianship was dissolved and Child[ren] w[ere] returned to Mother.
>
> * * *
>
> 9.      From June 2015 to present, Mother failed to participate in services.
>
> 10.     Since June 2015, Child[ren] ha[ve] not returned to Mother's care.
>
> 11.     Even though Mother was listed as compliant from December 2013 to June 2015, Mother failed to progress in services.
>
> 12.     Mother also failed to consistently take Child[ren] to therapy or case management appointments.
>
> 13.     Mother completed a substance abuse program[] but tested positive for illegal substances after completion.

14. Mother attended and recited information during case management; however, Mother lacked follow-through and made no progress in treatment.

15. Mother attended and cooperated in home-based therapy to address emotional regulation, cope with intense emotions, improve parenting skills, improve relationships and repair functioning ability.

16. While Mother appeared to be processing information learned during home-based therapy, Mother had inconsistencies in utilizing skills.

17. Mother began resisting treatment in home-based therapy in 2015 and did not make compliance a priority.

18. Mother relied on others to provide stability in her life[] but was never able to maintain relationships and supports due to conflict.

19. Mother had several boyfriends, friends, acquaintances, and family in and out of her home while Child[ren] w[ere] in her care.

20. Mother consistently failed to notify DCS of unauthorized people residing in her home, which created an unsafe and unstable home for Child[ren].

21. Mother claims Child[ren] . . . were never harmed by the presence of people in and out of the home; however, [L.W.] was raped while people in Mother's home were under the influence of illegal substances.

22. Additionally, during the CHINS case, [C.H.] cut herself due to Mother forcing them to stay overnight at a stranger's home.

23. Mother is still unable to provide a safe and stable home for Child[ren] as she continues to have unknown people in her home; Mother also remains dishonest about people in her home.

24.    Mother has difficulty taking ownership for her actions and has a pattern of blaming others.

25.    Even as recent as November 2016, Mother continues to blame others and make excuses for her situation.

26.    Mother's inability to regulate her emotions caused a decrease in structure and made her emotionally unavailable for Child[ren] and Child[ren]'s needs.

27.    Mother's emotional issues affected Child[ren] and caused an increase in negative behaviors and anxiety.

28.    Visitation between Mother and Child[ren] was chaotic and frequently ended early due to cussing, arguing, put-downs and blaming others.

29.    Mother no showed several visits and consistently appeared late for visits she did attend; therefore, Mother was required to call an hour in advance of visits.

30.    During visits, Mother regularly discussed inappropriate topics and focused on her issues rather than Child[ren].

31.    Mother wanted to be a friend to Child[ren], instead of a parent.

32.    Mother was unable to control Child[ren]'s behaviors and required intervention from the visitation supervisor.

33.    Although she required intervention, Mother was not receptive to parenting suggestions from the visitation supervisor.

34.    Despite efforts made by DCS and providers, services have not been successful for Mother as she has failed to improve her ability to parent Child[ren] and has not demonstrated change to remedy reasons for initial and continued removal.

35.    The mother is unable to maintain any level of consistency and stability.

36. Mother was incarcerated for multiple periods of time from September 2015 to November 2016; however, [M]other had the opportunity to participate in services prior to incarceration, during authorized releases, and after release from incarceration.

37. Mother was released from incarceration in September 2015 and was rearrested in October 2015.

38. Mother was released in January 2016 to attend Freebirds, an inpatient treatment facility.

39. While at Freebirds, Mother violated the terms of her probationary license and was arrested after approximately one (1) month.

40. Mother failed to successfully complete Freebirds program.

41. Mother has a history of criminal convictions and probation revocations, including: Operating a Vehicle with a BAC of .08 (2008), Possession of Methamphetamine (2008 & 2009), Failure to Stop After an Accident Resulting in Damage (2009), and Operating a Vehicle While Intoxicated Endangering a Person (2012 & 2015).

42. Mother still has a criminal case pending in Clay County, Indiana; trial is set in February 2017.

43. Throughout the entire case, Mother's parenting lacked structure, routine, and consistency.

44. Child[ren]'s behaviors were exacerbated due to lack of structure and Mother's home had no structure.

* * *

57. The [C]hild[ren] ha[ve] been removed from the parental home for at least six months under a Dispositional Decree.

58. The [C]hild[ren] ha[ve] been removed from the parental home for at least fifteen (15) months of the most recent twenty-two (22) months.

59.     GAL, Courtney Robison, agrees that it is in Child[ren]'s best interest for termination of parental rights and adoption and that continuing the parent-child relationship[s] between Mother and Child[ren] would be harmful to Child[ren].

60.     [C.H.], age seventeen (17) years old, believes termination of parental rights is in Child[ren]'s best interests.

61.     DCS' plan for [B.W. and L.H.] is that [they] be adopted.

62.     Adoption would provide permanency for the child[ren] in a safe and stable environment and is found to be satisfactory.

Appellant's App. Vol. II at 23-26 (citations omitted).[3]  DCS' plan for C.H. is Another Planned Permanency Living Arrangement ("APPLA").  The trial court also determined that "APPLA would provide permanency for [C.H.] in a safe and stable environment and is found to be satisfactory."  Appellant's App. Vol. II at 36.  On January 10, 2017, the trial court granted DCS' petition for termination of parental rights.  This appeal ensued.

# Discussion and Decision

[6]  We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution."  *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*.  However, a trial court must subordinate the interests of the

---

[3]  We have quoted from the trial court's order on Mother's rights over B.H., but, because the court issued nearly identical, albeit separate, orders on Mother's rights over C.H. and L.W., we have consolidated the court's language to refer to all the Children.

parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[7] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> * * *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2017). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[8] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cnty. Ofc. of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[9] Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[10] Mother challenges the sufficiency of the evidence to show 1) that there is a reasonable probability that the conditions that resulted in the Children's removal or the reason for placement outside the home will not be remedied and 2) that there is a reasonable probability that the continuation of the parent-child relationships poses a threat to the well-being of the Children. We address the sufficiency of the evidence supporting the trial court's conclusion that there is a reasonable probability that the conditions that resulted in the Children's removal or the reasons for placement outside the home will not be remedied.[4]

[11] In determining whether the evidence supports the trial court's finding that Mother was unlikely to remedy the reasons for the Children's removal, we engage in a two-step analysis. *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014). "First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quotations and citations omitted). In the second step, the trial court must judge a parent's fitness to care for her children at the time of the termination hearing, taking into consideration evidence of changed conditions. *Id.* However, the court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Moore v. Jasper Cty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted).

---

[4] Because the statute is written in the disjunctive and we affirm the court's judgment on this issue, we need not address the court's additional conclusion that continuation of the parent-child relationships poses a threat to the Children's well-being. I.C. § 31-35-2-4(b)(2).

Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* Moreover, DCS is not required to rule out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *Id.*

[12]     Mother does not challenge the trial court's findings on this issue, and we cannot say that the trial court clearly erred when it concluded from those findings that the conditions that resulted in the Children's removal from Mother's care will not be remedied. As DCS notes, Mother and Children have a child welfare history going back to at least 2008. The Children have been CHINS since 2013. The Children were removed from Mother's care due to Mother's failure to supervise the Children and her drug use. Yet, despite the intervention of the trial court in the CHINS proceedings, Mother has not remedied those issues. Mother attended the home-based therapy sessions from June 2013 until mid-2015; however, according to the therapist who provided the home-based therapy sessions, she was unable to apply what she had learned. Mother's attendance and compliance at those sessions slowed in mid-2015 and then stopped entirely when she was incarcerated in September of 2015. Additionally, Mother repeatedly failed to comply with the requirement to notify the FCM when Mother had certain people staying in the house with the Children. Mother also continued to test positive for illegal drugs after completing a drug abuse class.

[13] It should also be noted that the Children are thriving outside of Mother's care. C.H. testified that B.H. and L.W. are "completely different children" and that they are "outstanding" and "the happiest" that she has ever seen them. Tr. at 82-83. C.H. further testified that the Children are now all "doing the best that we have ever done." Tr. at 83.

[14] Mother's arguments on appeal simply seek to have this court disregard the evidence most favorable to the trial court's judgment and instead reweigh the evidence in her favor, which we cannot do so. We cannot say that the trial court clearly erred when it concluded that the conditions that resulted in the Children's removal will not be remedied. As such, we affirm the court's termination of Mother's parental rights.

[15] Affirmed.

Kirsch, J., and Brown, J., concur.